CASE 15—ACTION TO RECOVER DAMAGES FOR INJURY TO PROPERTY.—MARCH 19.

## City of Madisonville v. Bishop.

APPEAL FROM HOPKINS CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

MUNICIPAL CORPORATIONS—LIABILITY FOR INJURY TO PROPERY FROM FIREWORKS DISCHARGED BY TUMULTUOUS ASSEMBLAGE.

Held: An assemblage of 1,000 people in the main street of a city, obstructing the use of the street and discharging bombs, skyrockets, and other missiles loaded with powerful explosives at private property, endangering life and preventing the use of the street for purposes of business, is a "riotous or tumultuous assemblage of people," within Kentucky Statutes, section 8, making any city liable for injury to property by such an assemblage of people where the city had notice of the danger ,and the ability to prevent the danger; and this is true though the persons composing the assemblage were celebrating Christmas, and were not bent on evil.

WORTHINGTON, PRATT & WADDELL, FOR APPELLANT.

(No brief for appellant.)

City of Madisonville v. Bishop.

MAURICE K. GORDON, FOR APPELLEE.

JOHN FLEMING GORDON AND WILLIAM L. GORDON, OF COUNSEL.

### SYNOPSIS.

1. The petition of appellee as plaintiff below states a cause of action in his favor, at common law, and it was error for the lower court to sustain the demurrer as to it. Note to 16 Lawyer's Reports Annotated, 395; Prather v. Lexington, 52 Ky. Reps., 559; Ward v. Louisville, 55 Ky. Reps., 191; Spiers v. Brooklyn, 21 L. R. A., 641.

2. But inasmuch as the court overruled the demurrer to the second paragraph, which distinctly states a cause of action under the statute, and correctly rendered judgment thereon for plaintiff (appellee), he is content to ask an affirmance of that judgment.     Sec. 8, Kentucky Statutes; Henderson v. Pargny, 15 Ky. Law Rep., 745; Higgins v. Town of Crab Orchard, 9 Ky. Law Rep., 404; Webster's International Dictionary; State v. Archibald, 59 Vermont, 548; Stockton v. Stockton, 59 Indiana, 574.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

Appellee, M. W. Bishop, is a merchant in the city of Madisonville. He filed this suit to recover for the destruction of a costly plate glass window in his store. He alleged in his petition these facts: On Saturday night, December 23, 1899, the city caused and permitted a nuisance in the street in front of his store by suffering a riotous and tumultuous assembly of about 1,000 persons, unorganized, assembled for the purpose of violating the laws of the State as well as the city, and actually violating them by obstructing the street, rendering the use of it by the traveling public precarious, unpleasant, and dangerous, by discharging large quantities of fireworks, torpedoes, bombs, skyrockets, Roman candles, and other missiles loaded with powerful explosives at and near the plaintiff's buildings situated on one of the principal business streets of the city, and in the heart thereof, where the buildings are close together and contain valuable merchandise displayed in expensive plate

glass windows; that the mob or unlawful assemblage, without plaintiff's fault, exploded and fired their fireworks at plaintiff's building, and at the plate glass windows in it; that it was formed and commenced firing about 5 o'clock in the evening, and continued all night; that the damage to his house occurred about 9 o'clock, after the shooting had been continued over four hours, and after other property in the neighborhood had been destroyed by the same assemblage of persons, with the knowledge of the officers of the city, who knew of the damage it was doing and was likely to do to the property of the citizens, but refused to take any steps to check the nuisance endangering life and property; that they had the power and ability of themselves and with the power of the citizens of the city to prevent the damage, and had notice and good reason to believe, and, in fact did believe, that the tumultuous assemblage was about to take place. and were present among the assembly,. and saw and heard what was going on in ample time to prevent it from doing injury; but that they refused to allay or suppress the tumult or mob, and by reason thereof his property was destroyed. The defendant demurred to the petition.    Its demurrer was overruled, and it elected to stand by its demurrer, and, declining to plead to the petition, judgment was entered against it, and from this judgment it appeals.

The action is brought under section 8, Kentucky Statutes: "If within any city, any church, convent, chapel, dwelling-house or house used or designed for the transaction of lawful business, or ship, or shipyard, boat or vessel, or railroad, or property of any kind belonging to any street or other railroad company, or any article of personal property, shall be injured or destroyed, or if any property therein or thereon shall be taken away or injured by any rio-

City of Madisonville v. Bishop.

tous or tumultuous assemblage of people the full amount
of damages so done shall be recoverable by the person in-
jured by action against the city if the authorities thereof
have the ability of themselves or with the aid of their own
citizens to prevent such damage; but no such liability shall
be incurred by such city unless the authorities thereof shall
have had notice or good reason to believe that such riot
or tumultuous assemblage was about to take place, or hav-
ing taken place, shall have had notice of the same in time
to prevent said injury or destruction, either by their own
force or by the aid of the citizens of such city. No person
shall maintain such action who shall have unlawfully con-
tributed by word or deed toward exciting or inflaming such
tumult or riot, or who shall have failed to do what he rea-
sonably could toward preventing, allaying, or suppressing
it." It is insisted for the city that the words "any riotous
or tumultuous assemblage of people" refer only to an un-
lawful assemblage bent on evil, such as a mob, and that it
was not contemplated that it should apply to a crowd of
merrymakers celebrating the advent of Christmas. The
purpose of the assembly, or the aim that it had primarily
in view, is not material, if it was, in fact riotous or tumultu-
ous, and the city authorities had notice of it and ability
to prevent the damage it did. The word "tumultuous" is
thus defined: "Conducted with disorder; noisy, confused,
boisterous, disorderly, as a tumultuous assembly or meet-
ing." "Riotous" is defined thus: "Partaking of the na-
ture of an unlawful assembly or its acts; seditious, tumultu-
ous." Webster. Under these definitions an assemblage of
1,000 people in the main street of a city, obstructing the
use of the street, and discharging bombs, skyrockets, Ro-
man candles, and other missiles loaded with powerful ex-
plosives at private property, endangering life and prevent-

ing the use of the street for the purposes of business, must certainly be held a riotous or tumultuous assembly. In Jolly's Adm'x v. City of Hawesville, 89 Ky., 280 (11 R., 477), (12 S. W., 313), the intestate had been killed in a celebration of this kind, and the suit was brought against the city for his death. The court, after showing that the city was not liable aside from the statute above quoted, said: "But the care and particularity with which the conditions of such liability are set out in the statute, and the restriction of it in express terms to cases of injury to property, show the Legislature did not intend to thereby authorize a recovery against the city for personal injury resulting from the malfeasance or negligence of police officers." The action before us is for an injury to property. The purpose of the statute is to secure the property of the citizen from loss by these disorderly assemblages which the city has reason to believe will do damage, and may be suppressed by it. Such statutes have been passed in many of the States, and are upheld. 2 Dill. Mun. Corp., sec. 959. The statute should be liberally construed with a view to promote its purposes. Kentucky Statutes, sec. 460. Its aim is the protection of private property against injury by disorderly gatherings of persons, and to require the city to exercise its police power to this end. One of the objects of municipal government is the better security of life and property where the population is crowded. It is known that the police do not always suppress disorderly persons, and the purpose of the statute is to put a check upon tumultuous assemblages of people in the cities, and induce greater vigilance on the part of the police in the maintenance of quiet and good order as well as the proper transaction of business. In State v. Brown, 69 Ind., 95, 35 Am. Rep., 210, under a statute

making it a misdemeanor for three or more persons to "act in a violent and tumultuous manner," it was held that a party who went out to charivari a newly-married couple with clubs, bells, trumpets, tin pans, cannon, and other weapons, making a great tumult and disturbance, might be convicted. Sanders v. State, 60 Ga., 126.

Judgment affirmed.